WALTER C. VERMILLION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vermillion v. Commissioner
Docket No. 9485-79.
United States Tax Court
T.C. Memo 1982-192; 1982 Tax Ct. Memo LEXIS 555; 43 T.C.M. (CCH) 1057; T.C.M. (RIA) 82192; April 13, 1982. Walter C. Vermillion, pro se. John L. Hopkins, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income taxes for the calendar years 1976 and 1977 in the amounts of $ 539.44 and $ 1,023, respectively. The issue for decision is whether petitioner is entitled to deduct traveling expenses including the cost of meals and lodging near the site of the Watts Bar Nuclear Plant as ordinary and necessary business expenses and, if so, the amount of such deduction for 1976. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner filed his Federal *556 income tax returns for the calendar years 1976 and 1977 with the Director, Internal Revenue Service Center, Memphis, Tennessee. At the time of the filing of his petition in this case, petitioner resided in Rogersville, Tennessee. On June 23, 1976, petitioner was employed by the Tennessee Valley Authority (TVA) as an electrician at the Watts Bar Nuclear Plant. On June 22, 1976, he signed a document, TVA Form 9880A, entitled "Appointment Affidavit and Conditions." Among the statements contained in this document was the following: "Trades and labor temporary construction hourly, not to extend past: 77 06 06." This same document showed that petitioner was affiliated with Local 934 of the International Brotherhood of Electrical Workers (IBEW), Kingsport, Tennessee, and that the local union having jurisdiction over the job if other than home was "IBEW Local 175, Chattanooga, Tennessee." The TVA had an agreement with the Chattanooga, Tennessee, Local of IBEW with respect to supplying electricians at its project at the Watts Bar Nuclear Plant. The Chattanooga Local was unable to supply all the individuals needed for work on the Watts Bar Nuclear Plant and obtained electricians from other *557 locals. Petitioner received his assignment to work for TVA at the Watts Bar Nuclear Plant through the union agent of IBEW Local 934 because there was no work availlable for electricians within the jurisdiction of IBEW Local 934. Work on the Watts Bar Nuclear Plant was begun in 1975 and it was expected that it would require 8 years or more to complete the plant. The Watts Bar Nuclear Plant was approximately 250 miles from Hiltons, Virginia, where petitioner lived until the latter part of 1978, and was approximately 200 miles from Rogersville, Tennessee, where petitioner lived after the latter part of 1978. Petitioner had lived in Virginia all his life until he moved to Rogersville, Tennessee, in the latter part of 1978. Petitioner and his wife moved to Rogersville, Tennessee, because they found an old house which they bought to fix up. During the late 1970's and until sometime in 1980, the Watts Bar Nuclear Plant was at a construction stage that required a great number of sheet metal workers, steam fitters, and electricians and qualified individuals in those trades in the area of the Watts Bar Nuclear Plant were in short supply. Even though electricians were in short supply *558 in the area of the Watts Bar Nuclear Plant and other nuclear plants which were under construction at that time by the TVA, it was the policy of the TVA to employ all hourly construction workers on a temporary basis. For some time prior to 1978 and up to approximately October 1978 when the provision was deleted from the "Appointment Affidavit and Conditions" signed by hourly workers, TVA placed a date of 11 months and some odd days not to exceed 29 from the date of employment as the termination date of all hourly construction workers. These hourly construction workers were hired as temporary workers so that they could be dropped immediately from the TVA roles if necessary. TVA is an agency of the United States Government and at times was required by the Office of Management and Budget or a presidential directive to comply with certain employment ceilings. During the time the provision for termination of a temporary employee at the end of 11 months and 29 days was contained in the "Appointment Affidavit and Conditions," officials of TVA were of the view that this provision further aided in quink termination of hourly construction employees if such quick termination were necessary. *559 While this provision was in the appointment conditions, the temporary worker would be terminated at the stated termination date for a period usually of approximately 10 workdays and after that brief termination period generally would be reemployed. For electricians the chance of reemployment was well over 90 percent. When the 10-day furlough would occur, the employee at times would be told that he would very likely be needed and be reemployed after the 10-day break. Petitioner was told that he would be reemployed after his break in 1977 and after a similar break in 1978. Petitioner worked at the Watts Bar Nuclear Plant from June 23, 1976, until June 2, 1977 (leaving early at his own request), from June 21, 1977, until June 2, 1978, and from June 26, 1978, until July 26, 1979, when he left at his own request to accept employment with the TVA at its Phipps Bend Nuclear Plant at Surgoinsville, Tennessee, which is 6 miles from his home in Rogersville, Tennessee. At the time of the trial of this case he was still employed at the Phipps Bend Nuclear Plant. In June 1977 and June 1978 petitioner signed an "Appointment Affidavit and Conditions" similar to the one he had signed in 1976. *560 When petitioner went to work at the Watts Bar Nuclear Plant in June 1976, he did not know how long he would be employed at that plant. He had been working at various jobs assigned to him by the agent of IBEW Local 934 for a number of years. From December 20, 1971, until August 20, 1973, he had worked for the TVA at the Sequoyah Nuclear Plant at Daisy, Tennessee. He had resigned from this position to accept other employment. During the years 1976 and 1977 petitioner drove from his home in Hilton, Virginia, to the Watts Bar Nuclear Plant site every Sunday evening and drove home to Hilton on Friday evening. He kept a room near the Watts Bar construction site. During 1976 petitioner spent $ 787.95 for lodging in the vicinity of the Watts Bar Nuclear Plant. Petitioner on his Federal income tax return for the year 1976 deducted $ 2,887.65 as employee business expenses for travel away from home, consisting of $ 2,683.65 for meals and lodging and $ 204 for automobile expenses. On his Federal income tax return for 1977 petitioner deducted $ 3,717.40 as employee business expenses for travel away from home consisting of $ 3,663 for meals and lodging and $ 54.40 for automobile expense. *561 Respondent in his notice of deficiency disallowed $ 2,544.05 of the claimed travel expense deduction for 1976 and all the claimed travel expense deduction for 1977 with the following explanation: It is held that, since the termination of your employment at this job site could not be foreseen within a fixed and reasonably short period, the employment was indefinite, rather than temporary, and any travel expenses incurred in connection therewith were nondeductible personal expenses rather than ordinary and necessary business expenses. Further, it has not been established that any amount in excess of $ 343.60 allowed in 1976 was expended for the purpose designated. * * * OPINION Section 162(a)(2) [1] provides for a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business including traveling expenses while away from home in pursuit of a trade or business. Generally speaking, a taxpayer's home for the purpose of determining whether he is away from home in pursuit of a trade or business within the meaning of section 162(a) is considered to be his principal place of employment. . *562 However, when a taxpayer's employment at some location is temporary as distinguished from indefinite or indeterminate, he is considered while so employed to be away from home in pursuit of his trade or business. ; ; As we have pointed out on a number of occasions, employment is considered to be temporary where it can be expected to last only for a short period of time. ; . The record shows that petitioner in this case viewed his work at the Watts Bar Nuclear Plant as temporary since he had no definite commitment of the length of time his employment at that site would last. He argues that because he was an hourly employee who could be terminated at any time there was insufficient work available for his continued services to be *563 needed, his employment was temporary. However, this is not the definition of "temporary" that this Court has used in determining whether an individual is entitled to deduct traveling expenses while away from home under section 162(a)(2). . Petitioner testified that he did not know how long he would work at the Watts Bar Nuclear Plant when he commenced his employment there but that he was told that after about one year he would be terminated for approximately two weeks and then reemployed. The record shows that the need for workers, particularly electricians, at the Watts Bar Nuclear Plant was steady and this fact was known to petitioner. Also, the fact that construction on the plant would be expected to extend 6 or 7 years after 1978 was generally known. The fact that petitioner was working in the territorial jurisdiction of the Chattanooga Local of his union is not a reason to conclude that his employment at the Watts Bar plant was temporary. We have held that where skilled workers in a taxpayer's craft were in short supply in a certain area so that workers from another area were sent in to work there on a basis stated *564 to be "temporary," this fact did not cause the taxpayer's work to be temporary rather than indefinite for the purposes of section 162(a). . Nor has the fact of temporary layoffs interrupting otherwise continuous employment of a construction worker at a particular site been considered to necessarily cause the taxpayer's employment to be temporary rather than indefinite. . Considering the facts in this case against the background of our holdings in other cases, we conclude that petitioner's employment at the Watts Bar Nuclear Plant site in 1978 was not temporary but was indefinite. The record shows that workers in petitioner's craft were in short supply. Although the termination provision was put in petitioner's employment agreement, this did not mean that petitioner's work at Watts Bar Nuclear Plant would in fact be terminated. The record shows that the chances of an electrician not being terminated but merely furloughed for 10 days were over 90 percent. Since petitioner had previously been employed by TVA, his own chances of remaining employed at the *565 Watts Bar plant site after the one-year period were close to 100 percent. The record shows that petitioner was aware of this fact. Petitioner in this case is in effect arguing that since a construction worker's job is never permanent in the sense that he will be terminated when the project on which he is working is completed, he should not be expected to disrupt his family by moving them to his work site regardless of how long his work there will continue. However, this lack of absolute permanence is not the criteria which this Court and other courts have used in determining whether a taxpayer's work is temporary as distinguished from indefinite or indeterminate. See , affd. ; , affd. . On the basis of this record, we conclude that petitioner is not entitled to deduct the expenses of his meals, lodging, and transportation while living near the Watts Bar Nuclear Plant during the years 1976 and 1977 since he was not away from home in the pursuit of a trade or business within the *566 meaning of section 162(a)(2). Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩